**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**STEPHANIE KNOX-COLBURN**                                                      **PLAINTIFF**

**V.**                                                               **NO. 1:22-CV-44-DMB-DAS**

**DANIEL HEALTHCARE, INC.;
and JAMES C. HOLLAND**                                                      **DEFENDANTS**

**OPINION AND ORDER**

Claiming unlawful employment practices under the Family Medical Leave Act and the Americans with Disabilities Act, Stephanie Knox-Colburn sued Daniel Healthcare, Inc., and James C. Holland based on her termination following her and her husband's diagnoses with COVID-19. The defendants have moved to dismiss Knox-Colburn's complaint for failure to state a claim. Because Knox-Colburn failed to allege sufficient facts to maintain her FMLA and ADA claims, the motion to dismiss will be granted but Knox-Colburn will be allowed to seek leave to amend the complaint.

**I
Procedural History**

On March 10, 2022, Stephanie Knox-Colburn filed a complaint in the United States District Court for the Northern District of Mississippi against Daniel Healthcare, Inc., and James C. Holland. Doc. #1. The claims alleged in the complaint are set forth in five counts. *Id.* at 11–21. Counts I through IV, respectively, allege violations of the Americans with Disabilities Act ("ADA"): (1) "Disability Discrimination," (2) "Failure to Accommodate," (3) "Terminated for Association with Person Who Had a Disability," and (4) "Retaliation." *Id.* at 11–17. Count V alleges "Failure to Provide Leave Pursuant to the Family Medical Leave Act" ("FMLA"). *Id.* at 19. Knox-Colburn seeks injunctive relief; back pay with prejudgment interest; "compensation for

past and future pecuniary losses;" "compensation for past and future non-pecuniary losses, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation;" punitive damages; and "costs and attorney fees." *Id.* at 21–22.

On May 24, 2022, Daniel Healthcare and Holland jointly filed a motion to dismiss "pursuant to Rule 12(b) of the Federal Rules of Civil Procedure … for failure to state a claim upon which relief can be granted." Doc. #11. The motion is fully briefed. Docs. #12, #16, #17.

## II
## Standard

A motion to dismiss for failure to state a claim upon which relief can be granted implicates Federal Rule of Civil Procedure 12(b)(6). To survive dismissal under the Rule 12(b)(6) standard, "a complaint must present enough facts to state a plausible claim to relief. A plaintiff need not provide exhaustive detail to avoid dismissal, but the pleaded facts must allow a reasonable inference that the plaintiff should prevail." *Mandawala v. Ne. Baptist Hosp., Counts 1, 2, & 11*, 16 F.4th 1144, 1150 (5th Cir. 2021) (internal citation omitted). The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020). But the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* In ruling on a motion to dismiss, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Serrano v. Customs & Border Patrol*, 975 F.3d 488, 496 (5th Cir. 2020).

## III
## Factual Background

Stephanie Knox-Colburn worked as a Certified Nursing Assistant at The Meadows for over

20 years, where she cared for elderly residents assigned to her floor. Doc. #1 at 4. The Meadows is owned by Daniel Healthcare, Inc. *Id.* at 2. Daniel Healthcare is owned by James. C. Holland. *Id.* at 3.

On April 9, 2020, Knox-Colburn arrived for her shift at The Meadows, where all employees were required to check their temperature at the door due to the ongoing COVID-19 outbreak. *Id.* at 4. Knox-Colburn's temperature was normal and she did not have any other COVID-19 symptoms. *Id.* She also completed a questionnaire verifying that she did not have COVID-19 symptoms. *Id.* at 5.

That day, Knox-Colburn received an emergency call from Nurse Practitioner Natalie Heckart at Convenient Care, telling her that her husband tested positive for COVID-19 and that she should leave work immediately. *Id.* Until that phone call, Knox-Colburn was unaware that her husband had tested positive for COVID-19. *Id.* Knox-Colburn immediately notified her supervisor at The Meadows, Lindsey Evans, who was present when Knox-Colburn received the call,[1] of her husband's positive COVID-19 test and Heckart's instructions to go home and quarantine for 14 days. *Id.* at 6. Evans gave Knox-Colburn permission to leave work to go home and quarantine for 14 days. *Id.* As Knox-Colburn was driving home from The Meadows, Evans called her cell phone and advised her to get tested for COVID-19 and where she could go for that purpose. *Id.* at 7. Following Evans' instructions, Knox-Colburn went to Convenient Care the same day and was tested for COVID-19. *Id.*

Two days later, on April 11, 2020, Knox-Colburn's husband passed away from COVID-19. *Id.* The next day, Heckart informed Knox-Colburn that she tested positive for COVID-19. *Id.*

---

[1] Evans was standing just a few feet away from where Knox-Colburn was standing when she took Heckart's call. Doc. #1 at 6. Heckart asked Knox-Colburn if she wanted her to speak with Evans but Evans declined to take the phone when Knox-Colburn tried to hand it to her, even though the phone had been wiped down at Knox-Colburn's request. *Id.*

3

On April 14, 2020, Evans called to ask Knox-Colburn if she knew her husband had COVID-19 when she came to work on April 9, 2020. *Id.* at 8. Knox-Colburn responded that she had no knowledge her husband had COVID-19 then and reminded Evans she found out about her husband's diagnosis when she received the call from Heckart, at the same time as Evans since Evans was present when she took the call. *Id.* While on the call with Evans, Stacey Seay, an administrator at The Meadows, began to speak and Knox-Colburn realized someone other than Evans was on the line. *Id.* Seay asked if Knox-Colburn knew she had COVID-19 when she reported to work on April 9, 2020, and Knox-Colburn responded no. *Id.* During the call, Seay terminated Knox-Colburn's employment[2]—while she was in approved quarantine.[3] *Id.* at 9.

Knox-Colburn was not given a reason for her termination, never received a written notice of her termination, and was not advised of her right to appeal the termination pursuant the Employee Handbook. *Id.* Knox-Colburn learned of the alleged reason for her termination during her September 16, 2020, unemployment hearing—that she was terminated for providing false information on a COVID-19 questionnaire.[4] *Id.* at 9, 10.

Knox-Colburn filed a discrimination charge against The Meadows with the Equal Employment Opportunity Commission on May 12, 2020, alleging discrimination based on disability. *Id.* at 3; Doc. #1-1. On December 15, 2021, the EEOC issued Knox-Colburn a "Notice of Rights" letter and closed its file on her discrimination charge. Doc. #1-2.

---

[2] Previously, Knox-Colburn never had an administrative complaint filed against her nor had she ever been subjected to any verbal disciplinary reprimands or write ups. Doc. #1 at 4.

[3] The Meadows also fired Knox-Colburn's husband's first cousin. Doc. #1 at 11. The complaint does not allege the date or reason the cousin was fired.

[4] Knox-Colburn also discovered at the September 16 unemployment hearing that Heckart had notified The Meadows of her positive COVID-19 test without her knowledge. Doc. #1 at 7.

IV
Analysis

Knox-Colburn alleges that "Defendant"[5] (1) "terminated [her] employment because of her disability, perceived disability or record of having a disability," and by doing so "violated the ADA, as amended;" (2) "failed to provide [her] with a reasonable accommodation" that would allow her "to recuperate per local health agency orders;" (3) terminated her "as a result of her association with a person diagnosed with the COVID-19 virus, namely her husband;" (4) retaliated against her "for continuously rejecting Defendant's assertions about when the Defendant learned of her and her husband's COVID-19 diagnoses … in violation of the ADA as amended;" and (5) "terminated [her] to avoid having to accommodate [her] pursuant to her right to protective medical leave" under the FMLA. Doc. #1 at 12–13, 15–17, 20.

In seeking the dismissal of her claims, the defendants argue that "Holland was not [Knox-Colburn]'s employer and cannot be individually liable for the claims alleged in the Complaint" and that regardless, "both Defendants are entitled to dismissal as [Knox-Colburn] has not pled a disability under the ADA and has not pled facts sufficient to support her claim under the FMLA." Doc. #12 at 2.

### A. Holland's Individual Liability

#### 1. ADA

The defendants move to dismiss the ADA claims against Holland individually, arguing that (1) "[t]here is no cause of action against … Holland" as an individual and (2) Knox-Colburn "did not exhaust any administrative remedies as to … Holland." Doc. #12 at 5. Knox-Colburn responds that Holland "falls within the scope of the exception to the general rule" that "courts … decline[]

---

[5] Knox-Colburn does not specify against which of the two named defendants she asserts each claim. The only times the plural "Defendants" is referenced is in the prayer for relief and in the caption. Doc. #1 at 1, 21, 22.

to impose liability on individuals unless they are employers." Doc. #16 at 8. Regarding administrative remedies, Knox-Colburn submits that "Holland was served with the Summons and Complaint on the same day [Daniel Healthcare] was served" and "parties represented by counsel can invoke the judicially-recognized identity-of-interest exception and actual-notice exception to Title VII's named-party requirement for EEOC charges." *Id.* at 9. The defendants reply that Knox-Colburn "did not identify [Holland] as her employer in the Complaint or in her EEOC Charge." Doc. #17 at 3.

The ADA prohibits discrimination "on the basis of a disability" by any "covered entity," 42 U.S.C. §12112(a), including an "employer," *id.* at § 12111(2). An employer is defined as "a person engaged in an industry affecting commerce … and any agent of such person." *Id.* at § 12111(5)(A).

> Although the Fifth Circuit appears not to have addressed the issue of individual liability under the ADA's employment discrimination provisions, courts in this circuit have consistently concluded that: in light of (a) the similarities between the definition of "employer" in Title VII and the ADA, (b) the similar purposes of the two statutes, (c) the Fifth Circuit's consistent holdings that individuals cannot be held liable under Title VII in either their individual or official capacities, and (d) the weight of authority outside of the Fifth Circuit, individuals are not subject to liability under Title I of the ADA.

*Buckner v. W. Tallahatchie Sch. Dist.*, No. 3:19-cv-264, 2020 WL 5549159, at *3 (N.D. Miss. Sep. 16, 2020) (cleaned up). A Title VII allegation against the owner of the business "does not alter the fact that the employer was [the business]." *Provensal v. Gaspard*, No. 10-4276, 2011 WL 2004416, at *1 (E.D. La. May 23, 2011), *aff'd*, 487 F. App'x 874 (5th Cir. 2012).[6]

Because individuals are not liable under Title I of the ADA and because the complaint

---

[6] For the proposition that "Title VII does not impose liability on individuals unless they are employers," Knox-Colburn cites "*Provenal* [sic.] *v. Gaspard*, 524 F. App'x 321 (5th Cir. 2008)." Doc. #16 at 8. However, 524 F. App'x 321 is the citation for *United States v. Eames*, 524 F. App'x 320 (9th Cir. 2013), an unrelated opinion regarding a criminal defendant's motion for the return of property under Federal Rule of Criminal Procedure 41(g).

alleges that Knox-Colburn was an employee of The Meadows (and that Daniel Health Care is The Meadows' owner),[7] the complaint fails to allege sufficient facts for an ADA claim against Holland. Because there is no ADA claim sufficiently stated against Holland, the Court declines to address the issue of exhaustion of administrative remedies. Dismissal of the ADA claims against Holland is warranted.

### 2. FMLA

The defendants argue that Knox-Colburn's FMLA claim fails because Knox-Colburn "pleads no allegation within her Complaint that … Holland was her employer … as defined under the FMLA." Doc. #12 at 6. Knox-Colburn responds that the FMLA definition of employer "include[s] any person acting, directly or indirectly, in the interest of a covered employer" and that "Holland was the owner of Daniel Healthcare" so he is "individually liable for any violations of the requirements of FMLA." Doc. #16 at 11. The defendants reply that "the Complaint makes no allegation of any conduct of … Holland as to [the] FMLA claims, separate from the mere fact that he is an 'owner' of her employer." Doc. #17 at 5.

The FMLA provides for personal liability of an employer, defined as "any person engaged in commerce or in any industry or activity affecting commerce, who employs 50 or more employees" or "any person acting, directly or indirectly, in the interest of a covered employer to any of the employees of the employer." 29 C.F.R. § 825.104(a). The FMLA's definition of

---

[7] The complaint does allege that Knox-Colburn "was employed by the Defendant" and that "Defendant is an 'employer' as defined by the Family Medical Leave Act" and the ADA—without specifying which "Defendant" is referenced. *See* Doc. #1 at 2, 3, 19. But it also alleges that Knox-Colburn has "twenty years of employment with the defendant *company*" and was "terminated … after 20+ years of employment at the Defendant's *company*." *See id.* at 4, 10 (emphases added). Because these allegations are contradictory, they are facially implausible. *See Mora v. Univ. of Tex. Sw. Med. Ctr.*, 469 F. App'x 295, 299 (5th Cir. 2012) (per curiam) (when an "allegation is contradicted by the other facts alleged in the complaint … the claim [is] implausible on its face"); *see also Cicalese v. Univ. of Tex. Med. Branch*, 456 F. Supp. 3d 859, 872 n.8 (S.D. Tex. 2020) ("Where [a] plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss.") (quoting *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016)).

employer is "substantially identical" to the definition of employer under the Fair Labor Standards Act ("FLSA"), so the Fifth Circuit looks to FLSA precedent when applying the FMLA. *Rideau v. Lafayette Health Ventures, Inc.*, 381 F. Supp. 3d 709, 717 (W.D. La. 2019) (citing *Modica v. Taylor*, 465 F.3d 174, 186 (5th Cir. 2006)). To determine whether an individual is an employer under the FLSA, the Fifth Circuit considers "whether the alleged employer (1) has the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (quoting *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 329 (5th Cir. 1993)).

Here, the complaint alleges only that Holland is the owner of Daniel Healthcare but does not detail any participation by Holland in its operation. Doc. #1 at 3. For this reason, there are not sufficient facts in the complaint to establish Holland as Knox-Colburn's employer such that the FMLA provides a cause of action against him. Dismissal of the FMLA claim against Holland is appropriate.

### B. Daniel Healthcare

#### 1. ADA

The defendants argue Knox-Colburn's ADA claims against Daniel Healthcare fail because Knox-Colburn does not allege sufficient facts in the complaint to establish that she or her husband had a disability under the ADA. Doc. #12 at 7. Knox-Colburn responds that "[t]he allegations contained in [her] Complaint satisfy the requirements that must be met to survive a motion to dismiss for failure to state a claim" because "it has been established that [she] was diagnosed with COVID-19," and the defendants "have not met their burden of establishing the nature of Plaintiff's COVID related illness." Doc. #16 at 20–21. The defendants reply that "the issue before the Court though is whether [Knox-Colburn] has pled facts in her Complaint to support that she had an actual

8

disability." Doc. #17 at 8.

The ADA requires that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to … discharge of employees." 42 U.S.C. § 12112(a). "A claim of discrimination under the ADA requires a plaintiff to allege a disability, that [s]he was qualified for [her] position, and that [s]he suffered an adverse employment action because of [her] disability." *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021). The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). An individual is "regarded as having such an impairment" when she is subjected to a prohibited action "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* at § 12102(3)(A).

While COVID-19 can be the basis of a qualifying disability, not every case of COVID-19 is considered a disability under the ADA, and "an individualized assessment and case-by-case determination are necessary." *McKnight v. Renasant Bank*, No. 1:21-cv-139, 2022 WL 1342649 at *3 (N.D. Miss. May 3, 2022) (citing U.S. Equal Employment Opportunity Commission, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (last updated July 12, 2022), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws ("EEOC Guidance on COVID-19 and the ADA")). "[A] person infected with the virus causing COVID-19 who is asymptomatic or a person whose COVID-19 results in mild symptoms similar to those of the common cold or flu that resolve in a matter of weeks—with no other consequences—will not have an actual disability within the meaning of the ADA." *Id.* (citing EEOC Guidance on COVID-19 and the ADA).

9

Knox-Colburn's complaint alleges that two days after "her husband's positive COVID-19 test results," her "husband passed away from COVID-19." Doc. #1 at 6–7. Regarding her own diagnosis, Knox-Colburn alleges that she "received a call" that "informed [her] of her positive COVID-19 test results." *Id.* at 7. The complaint fails to allege any facts describing debilitating symptoms or debilitating effects of COVID-19 that show Knox-Colburn or her husband had a disability or was regarded as having a disability.[8] Because, as pled, the medical condition of Knox-Colburn and her husband does not meet any of the three definitions of disability under the ADA, Knox-Colburn has failed to state ADA claims against Daniel Healthcare and the motion to dismiss will be granted accordingly.

### 2. FMLA

The defendants argue that while the complaint does not specify whether Knox-Colburn proceeds with her FMLA claim under a theory of interference or a theory of retaliation, the claim should be dismissed because Knox-Colburn failed to "show that she engaged in protected activity under the FMLA" as required for retaliation. Doc. #12 at 14. Knox-Colburn responds that "[c]aring for an employee's spouse with a serious health condition is a FMLA qualifying reason" and "[t]he COVID-19 virus which afflicted Mr. Colburn constitutes a serious health condition, as it was the tragic cause of his death." Doc. #16 at 13. The defendants reply that Knox-Colburn "has only filed a claim related to her alleged serious medical condition" and "[n]ot once in her claim under the FMLA as pled in her Complaint does [she] allege that she needed, requested, or was entitled to FMLA to care for her spouse." Doc. #17 at 10.

Under the FMLA, it is illegal for "any employer to interfere with, restrain, or deny the

---

[8] While the complaint alleges Knox-Colburn's husband died of COVID-19, it does not describe any symptoms or effects before his death.

10

exercise of or the attempt to exercise" FMLA leave or "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a). Knox-Colburn fails to specify whether her FMLA claim is an interference claim or a retaliation claim. However, because the complaint alleges Evans allowed Knox-Colburn to leave work,[9] the defendants did not "interfere with, restrain, or deny the exercise"[10] of FMLA leave and the Court considers her claim a retaliation claim. "To state a prima facie claim for discrimination or retaliation under the FMLA, the plaintiff must allege that (1) [s]he is protected under the FMLA; (2) [s]he suffered an adverse employment decision; and … [3] the adverse decision was made because of the plaintiff's request for leave." *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 305 (5th Cir. 2021) (internal quotation marks omitted).

The FMLA entitles eligible employees to "12 workweeks of leave during any 12-month period … [i]n order to care for spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition," or "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(C), (D). A serious health condition is "an illness, injury, impairment, or physical or mental condition that involves … inpatient care in a hospital, hospice, or residential medical care facility; or … continuing treatment by a health care provider." *Id.* at § 2611(11).

To adequately allege an FMLA claim, Knox-Colburn must first allege that she or her husband had a "serious health condition" that caused her to take leave from work. According to the complaint, when Knox-Colburn left work, she did not have a serious health condition. Doc.

---

[9] Doc. #1 at 6.

[10] 29 U.S.C. § 2615(a)(1).

11

#1 at 6–7. Instead, she alleges she left work due to exposure to COVID-19 premised on her husband's COVID-19 diagnosis. *Id.* at 6. Knox-Colburn's complaint does not detail for herself or her husband any "inpatient care in a hospital, hospice, or residential medical care facility" or "continuing treatment by a health care provider" as required by statute. 29 U.S.C. § 2611(11); *see generally* Doc. #1. She also does not allege that she left work to care for her husband due to his diagnosis. Knox-Colburn therefore fails to allege sufficient facts to show a protected activity under FMLA and her claim is properly dismissed.

### C. Leave to Amend

Since the complaint fails to adequately allege facts to support ADA or FMLA claims against Holland and Daniel Healthcare for the reasons explained above, the defendants' motion to dismiss will be granted with respect to all claims. However, since courts "should provide *at least* one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the plaintiff[] … [is] unwilling or unable to amend in a manner that will avoid dismissal," *Dierlam v. Trump*, 977 F.3d 471, 478 n.44 (5th Cir. 2020) (cleaned up), dismissal of these claims will be without prejudice, and Knox-Colburn will be provided an opportunity to seek leave to amend her complaint.

### V
### Conclusion

The defendants' motion to dismiss [11] is **GRANTED**. Within fourteen (14) days of the entry of this order, Knox-Colburn may seek leave to amend her complaint with respect to her claims.[11]

---

[11] Should Knox-Colburn fail to seek leave to amend or if it is ultimately determined amendment would be futile, the claims will be dismissed with prejudice.

**SO ORDERED**, this 10th day of January, 2023.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**